# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Illinois Lumber and Material         Civil No. 13-CV-715 (SRN/JJK)
Dealers Association Health
Insurance Trust,

         Plaintiff,            MEMORANDUM OPINION
                              AND  ORDER

v.

United States of America,

         Defendant.

_____

Thomas E. Brever and Andrew T. Brever, Foster & Brever, PLLC, 2812 Anthony Lane South, Suite 200, St. Anthony, MN 55418, for Plaintiff

Michael R. Pahl, United States Department of Justice, Tax Division, PO Box 7238 Ben Franklin Station, Washington, DC 20044, for Defendant
_____

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Jurisdiction [Doc. No. 11] and Plaintiff's Motion for Summary Judgment [Doc. No. 16]. For the reasons set forth herein, Defendant's motion is denied and Plaintiff's motion is granted.

## I.   BACKGROUND

Plaintiff-Taxpayer Illinois Lumber and Material Dealers Association Health Insurance Trust ("Illinois Lumber") filed this action for the refund of taxes paid pursuant

to an erroneously filed 990 T Unrelated Business Income Tax Return for the fiscal year

ending ("FYE") February 29, 2004.   (Compl. ¶ 1 [Doc. No. 1].)  Illinois Lumber

contends that the amount at issue is $200,686, in addition to allowable interest and costs.

(Id.)  Illinois Lumber is a tax-exempt voluntary employees' beneficiary association

("VEBA") insurance trust.   (See Ex. 1 to Ulrich Aff. [Doc. No. 19].)[1]  Defendant is the

United States of America and its agency, the Internal Revenue Service (the "IRS").

    In light of Illinois Lumber's status as a VEBA trust, the IRS informed Illinois

Lumber in a May 1989 letter that it was "not required to file federal income tax returns

unless [Illinois Lumber is] subject to the tax on unrelated business income under section

511 of the Code."  (Id.)

    At some point prior to 2003, Plaintiff had obtained a membership interest in the

Great American Mutual Holding Company ("Great American").  (See Ex. 2 to Ulrich

Aff.])  In approximately September 2003, Great American was involved in a

"demutualization" process.  (Id.)   In this context, demutualization refers to the

conversion of a mutually-owned insurance company to a stock-ownership based

insurance company.  See Mell v. Anthem, Inc., 688 F.3d 280, 282 (6th Cir. 2012) (citing

3 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 39:43 (3d ed. 2005)).   When

demutualization occurs, the insurance company's policy holders are typically offered

stock or cash in exchange for their ownership rights.  See id. at 284 (see also Exs. P8 &

---

[1] All references to the Ulrich Affidavit are found at Doc. No. 19 in the docket of
this case.

P9 to Ulrich Aff. at 1).

In September 2003, Albert A. Riederer, Special Deputy Liquidator of Great American, sent a letter to Illinois Lumber, transmitting a cash payment of $1,474,442.30. (Exs. 2 & 3 to Ulrich Aff.)   The payment represented Illinois Lumber's initial distribution for its membership interest in Great American.  (Id.)  In addition to noting that the payment would not affect the benefits of any Great American policies held by Plaintiff, Great American also provided guidance on the tax consequences of the distribution.  (Id.)  Great American advised that "[t]he liquidator has obtained a private letter ruling from the Internal Revenue Service confirming that your Membership Interest qualifies as a capital asset and the entire amount of the initial distribution to Eligible Members will constitute long-term capital gain."  (Ex. 2 to Ulrich Aff.)   As reflected in Revenue Ruling 71-233, the IRS considered the demutualization payments to be taxable income to the policyholders, for which the policyholders were to report a long-term capital gain with zero basis. (Rev. Ruling 71-233; see also Ex. P5 to Ulrich Aff. at 11; Exs. P8 & P9 to Ulrich Aff. at 3.)   In Great American's September 2003 letter to Illinois Lumber, Great American also attached an IRS Form 1099 on which Plaintiff could report the taxable amount of its distribution.  (Ex. 2 to Ulrich Aff.)  In addition, Great American indicated that it would distribute the remainder of the demutualization assets in the future, but did not estimate the amount or the approximate time frame of any future distributions. (Id.)

Plaintiff paid FYE 2004 taxes on February 17, 2004.  (Def.'s Ex. in Supp. Mot. to

Dismiss at 2 [Doc. No. 14].)  On or before October 15, 2004, Plaintiff filed the 2004

return, including the tax calculated on the demutualization payment, which it denoted on

a 990 T Unrelated Business Income Return.[2]  (Compl. ¶ 9 [Doc. No. 1].)  Plaintiff alleges

that its taxable income for 2004 consisted solely of two items: the $1,474,134

demutualization distribution and $13,303 of interest and dividends generated from exempt

activity income.  (Id. ¶ 10.)

Plaintiff also received at least two subsequent demutualization proceeds which it

reported as taxable long-term capital gains on its 2006 taxes, filed on July 15, 2006, and

its 2008 taxes, filed on July 24, 2008.  (Exs. P8 & P9 to Ulrich Aff.)  It is unclear from

the parties' submissions whether the 2006 and 2008 proceeds were in the form of cash or

stock.  (Id.)

On August 6, 2008, the Federal Claims Court issued a decision in Fisher v. United

States, 82 Fed. Cl. 780 (Fed. Cl. 2008), in which the court ruled against the IRS's position

of assigning zero income tax basis to stock received in the demutualization of an

insurance company.  Under the circumstances of Fisher, the court concluded that the sale

proceeds of the demutualized stock were to be treated as a return of capital up to the

---

[2] Defendant's records indicate that the return was filed on July 25, 2004. (Def.'s Ex. in Supp. Mot. to Dismiss at 2 [Doc. No. 14].)  However, in its Answer, Defendant admits that Illinois Lumber filed a return on or before October 15, 2004. (Answer ¶ 9 [Doc. No. 6].)   Because Defendant acknowledges the later filing date in its Answer, the Court recognizes the later of the two dates – October 15, 2004 – as the date on which Plaintiff filed its 2004 return.

amount of the cost basis in the insurance policy.  Id. at 797-99.  Any taxable gain would be limited to amounts received in excess of the cost basis.  Id.  The IRS appealed.

A few months after issuance of the Fisher opinion, Illinois Lumber filed an amended return for its 2006 and 2008 taxes on October 31, 2008.  (Exs. P8 & P9 to Ulrich Aff.)  Within a few weeks, on November 23, 2008, Illinois Lumber also filed a claim for refund of its 2004 taxes.[3]  (Compl. ¶ 12 [Doc. No. 1].)  On December 1, 2008, Illinois Lumber filed an amended return for its 2004 taxes, claiming no tax due and indicating that it had previously paid $235,000 in estimated taxes.  (Ex. P4 to Ulrich Aff.)

In late 2009, the Court of Appeals for the Federal Circuit affirmed the Federal Claims Court's decision in Fisher, issuing an affirmance without a published opinion. Fisher, 333 Fed. App'x 572 (Fed. Cir. 2009) (per curiam).

On December 16, 2009, the IRS disallowed Plaintiff's refund claim with respect to its 2004 taxes.  (Def.'s Ex. in Supp. Mot. to Dismiss at 2 [Doc. No. 14].)   Plaintiff sought an administrative appeal.

On July 5, 2010, the IRS approved Illinois Lumber's claims for refunds for 2006 and 2008.  (Exs. P10 & P11 to Ulrich Aff.)   In the IRS's "Explanation of Items" with respect to both the 2006 and 2008 refunds, the IRS noted that the final resolution of the appeal in Fisher "dictated how to move forward on these issues."  (Exs. P8 & P9 to Ulrich Aff. at 3.)   Finding that Plaintiff's claim for refund for 2006 and 2008 involved the same

---

[3] Defendant's records indicate that the refund claim was filed on September 6, 2004.  (Def.'s Ex. in Supp. Mot. to Dismiss at 2 [Doc. No. 14].)

issue, Plaintiff's "*claim for refund for taxes for proceeds from insurance demutualization should be allowed in full* pursuant to the outcome of [the appellate] decision in [Fisher]."

(Id.)

On April 18, 2011, the IRS Appeals Office communicated with Plaintiff by letter regarding Plaintiff's claim for the 2004 refund.  (Ex. P14 to Ulrich Aff.)   In the letter, IRS Appeals Officer Julie North stated:

> [Illinois Lumber] filed a claim for refund asserting that they erroneously reported demutualization gains as taxable income on Form 990T for tax period ended February 29, 2004.  Had [Illinois Lumber's] claim been timely filed, we would granted [sic] their claim, resulting in an overpayment of tax and a corresponding refund; demutualization payments are not taxable and are not reportable as unrelated business taxable income (see Fisher v. United States, 82 Fed. Cl. 780 (2008), aff'd per curium, 333 Fed. App'x 572 (Fed. Cir. 2009)).  However, [Illinois Lumber's] claim was not filed timely. . . .  Since their claim was filed late, it must be denied.

(Id.)

At some point during this process, Illinois Lumber retained the services of certified public accountant Charles Ulrich, in whom Illinois Lumber granted power of attorney. Through Mr. Ulrich, Illinois Lumber responded to the Appeals Office's April 18, 2011 letter, contesting the IRS's denial of Plaintiff's refund claim for 2004.  In Mr. Ulrich's letter of May 30, 2011, he emphasized Illinois Lumber's status as a tax-exempt entity, noting that Illinois Lumber was not required to file any Form 990 T unrelated business income.  (Ex. P15 to Ulrich Aff. at 2.)   Mr. Ulrich argued that the three-year statute of limitations, 26 U.S.C. § 6511, was inapplicable to Illinois Lumber because the statute applies only to persons or entities required to pay tax.  (Id. at 3-4.)   In addition, Mr.

Ulrich noted that the IRS's "zero basis" Revenue Ruling 71-233 did not address the specific circumstance of demutualization of an insurance company.  (Id. at 4.)   Moreover, even if the statute of limitations was applicable to Plaintiff, Mr. Ulrich argued that Plaintiff met the requirements for mitigation under 26 U.S.C. §§ 1311-14, and could avoid the effect of the statute of limitations.  (Id. at 5-9.)

        In response, Charles Fisher, Team Manager of the IRS Appeals Office, fully denied Plaintiff's 2004 refund claim on June 24, 2011. (Ex. P17 to Ulrich Aff.)  This letter from Mr. Fisher to Mr. Ulrich is referred to by Plaintiff as the "final determination letter" and by the IRS as the "full claim disallowance."  (Pl.'s Mem. Supp. Mot. for Summ. J. at 14 [Doc. No. 18]; Ex. P17 to Ulrich Aff.)   In the June 24 letter, the IRS stated that Plaintiff was not entitled to a refund for its 2004 taxes because Plaintiff's claim was filed after expiration of the statute of limitations:

> The taxpayer's argument that they are not required to file Form 990-T is irrelevant.  They filed and reported unrelated business income on their Form 990-T, therefore, they created the statute.  IRC 6511(a) provides that a claim for refund of an overpayment of tax must be filed within 3 years from the [sic] return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the [sic] tax was paid.

(Ex. P16 to Ulrich Aff.)   The IRS Appeals Office advised Plaintiff of its right to bring suit within two years from the mailing date of the letter.  (Id.)

        It appears that Mr. Ulrich subsequently communicated with Mr. Fisher via fax.  In an August 16, 2011 response letter from Mr. Fisher to Mr. Ulrich, Mr. Fisher sought to assist Illinois Lumber in understanding why the Appeals Office was not inclined to

7

reopen or consider further arguments regarding Illinois Lumber's 2004 refund claim. (Ex. P.17 to Ulrich Aff. at 1.)  Fisher stated that "your client's case was closed by this office on June 24, 2011 as a full claim disallowance.  The claim was disallowed as it was filed late and therefore time barred [sic].  (Id.)

In addition, Mr. Fisher noted that the mitigation provisions of 26 U.S.C. §§ 1311-14 failed to overcome the effect of the statute of limitations on Plaintiff's claim.  (Id.) Observing that § 1312 lists seven limited circumstances of adjustment, Fisher found that none applied to Illinois Lumber's refund claim.  (Id. at 1.)  Of the seven enumerated circumstances, Mr. Fisher opined that the only one that might apply was § 1312(1), applicable to the double inclusion of an item of gross income, i.e., the inclusion in gross income of the same item for more than one taxable year.  (Id. at 2-3.)  However, Mr. Fisher found this circumstance inapplicable because Plaintiff did not report a double inclusion of income in 2004.  (Id.)  Mr. Fisher further stated that "[t]he mitigation provisions do not apply to [Illinois Lumber's] claim for refund because the Service has not taken an inconsistent position that caused a double inclusion of income."  (Id. at 3.) Mr. Fisher did not address the possible applicability of the circumstance of adjustment found in § 1312(7) for basis of property after erroneous treatment of a prior transaction. Mr. Ulrich had previously identified this circumstance as the applicable provision supporting Plaintiff's claim for mitigation in a May 30, 2011 letter to the IRS Appeals Office.  (Ex. P15 to Ulrich Aff. at 7-8.)

Mr. Ulrich responded to Mr. Fisher in a letter dated September 5, 2011, requesting

a more detailed explanation regarding the IRS's position that mitigation was unavailable

to Illinois Lumber.  (Ex. P18 to Ulrich Aff. at 1.)  Mr. Ulrich again emphasized Illinois

Lumber's status as a tax exempt organization in describing its erroneous filing of the

three tax returns for 2004, 2006, and 2008.  (<u>Id.</u> at 2.)   He stated that instead of

recognizing that Plaintiff had no unrelated business income and was therefore not

required to return or pay any unrelated business income tax, the IRS "compounded the

error by supporting the premise of" such tax liability.  (<u>Id.</u>)   Mr. Ulrich asserted that the

"myth" of this tax liability "was finally dispelled" with the letter of April 18, 2011, in

which Appeals Officer Julie North stated that if Plaintiff's claim for a 2004 refund had

been timely filed, the payment would have been refunded in light of the <u>Fisher</u> opinion.

(<u>Id.</u>)  Mr. Ulrich also contended that North's statement established the IRS's inconsistent

position as to the tax treatment of demutualization proceeds.  (<u>Id.</u>)

 In support of Illinois Lumber's mitigation argument, Mr. Ulrich acknowledged in

his September 5 letter that an IRS "determination" is a requirement for mitigation.  (<u>Id.</u> at

3-4.)  He identified three determinations: (1) the <u>Fisher</u> decision; (2) the combined letters

of April 18, 2011 and June 24, 2011 in which the holding in <u>Fisher</u> was acknowledged

and applied to Plaintiff's 2006 and 2008 taxes; and (3) the trust tax exempt letter of May

12, 1989 from the IRS to Illinois Lumber.  (<u>Id.</u>)

 In addition, Ulrich again referenced § 1312(7) as the circumstance under which the

mitigation adjustment was authorized.  (<u>Id.</u> at 5.)  In support of this basis-related

circumstance of adjustment, Ulrich stated:

>The demutualization/liquidation distributions were in fact partial recoveries of exempt purpose health and welfare insurance premiums paid in prior years to [General American].  [. . . Illinois Lumber] was a tax-exempt VEBA trust and the insurance premiums never reduced the trust's tax in any time period (because they never had any unrelated business income or filed [a] 990 T [form]).

(Id. at 7.)

In a September 14, 2011 response letter, Mr. Fisher merely acknowledged receipt of Mr. Ulrich's letter, but indicated that the Appeals Office was taking no further action on the matter.  (Ex. P19 to Ulrich Aff.)

On October 20, 2011, Mr. Ulrich wrote to Michael Bibb, Director of the IRS Appeals Office, detailing Illinois Lumber's efforts to obtain a refund on its 2004 taxes. (Ex. P20 to Ulrich Aff.)  Mr. Ulrich indicated that in the April 18, 2011 letter, IRS Appeals Officer North expressly took the position that demutualization payments are not taxable.  (Id. at 2-3.)   He again noted that the IRS also agreed that had Illinois Lumber timely filed its 2004 refund claim, it would have been granted.  (Id.)

In addition, Mr. Ulrich argued that pursuant to 26 U.S.C. § 6020, the IRS Secretary was required to execute an amended return to correct the false return previously filed by Illinois Lumber.  (Id. at 5-6.)   Again, Mr. Ulrich advocated for mitigation pursuant to § 1312(7) and further noted that as a tax-exempt entity, Illinois Lumber was not required to pay taxes on the demutualization distribution, nor did it have any other unrelated trade or business income.  (Id. at 1-11)

Approximately four months later in February 2012, Mr. Ulrich sent a letter to

Sheldon Kay, IRS Deputy Chief of Appeals.  (Ex. P21 to Ulrich Aff.)  This letter was

apparently sent in response to a letter dated December 21, 2011 from Mr. Kay to Mr.

Ulrich that is not part of the record.  (Id. at 1.)  Mr. Ulrich again noted that the specific

mitigating circumstance of adjustment applicable to Plaintiff's claim for a refund was §

1312(7), explaining that

> [t]he specific transaction in this case was an erroneously reported capital
> gain demutualization/liquidation distribution which was originally reported
> with a zero basis and which properly should have been reported with a basis
> equal to the fair market value or cash distribution that was received at the
> date of distribution.

(Id.)

Plaintiff filed this suit on March 28, 2013, seeking a refund of its 2004 taxes.

(Compl. ¶¶ 21-25 [Doc. No. 1].)  Defendant filed its answer on July 1, 2013.  (Answer

[Doc. No. 6].)  Pursuant to Fed. R. Civ. P. 12(b)(1), the United States moves to dismiss

for lack of subject-matter jurisdiction, arguing that Plaintiff's claim is time-barred by 26

U.S.C. § 6511.  (Def.'s Mem. Supp. Mot. to Dismiss at 1-3 [Doc. No. 13].)   Illinois

Lumber opposes Defendant's motion and moves for summary judgment, arguing that the

statute of limitations is inapplicable to Illinois Lumber.  (Pl.'s Mem. Supp. Mot. for

Summ. J. at 6-12 [Doc. No. 18].)  Even if the Court determines that the statute of

limitations applies, Plaintiff contends that the mitigation provisions of 26 U.S.C. §§ 1311-

14 apply to avoid the bar of the statute of limitations.  (Id. at 12-19.)   Plaintiff asserts that

there are no material issues of fact in dispute and that summary judgment should be

granted in its favor.  (Id.)

## II.     DISCUSSION

### A.     Standard of Review

A court's review of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is generally limited to the pleadings.  See Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 (8th Cir. 2003).   The Eighth Circuit has observed, however, that in cases in which a motion to dismiss is based on a lack of jurisdiction, "'it is not always inappropriate to convert a Rule 12(b)(1) motion into a Rule 12(b)(6) motion.'"  Frazier v. Vilsack, 419 Fed. App'x 686, 689 (8th Cir. 2011) (quoting Jensen v. Henderson, 315 F.3d 854, 857 n.5 (8th Cir. 2002)).   Where matters outside the pleadings are considered by the Court, Fed. R. Civ. P. 12(d) requires the court to treat a 12(b)(6) motion as one for summary judgment.  Id.   Here, the issues raised in Defendant's Motion to Dismiss and Plaintiff's Motion for Summary Judgment are identical.  Both parties submitted exhibits in support of their respective motions.  (Def.'s Ex. in Supp. Mot. to Dismiss [Doc. No. 14]; Ulrich Aff. [Doc. No. 19] & Exs. P1-P22.)  Accordingly, the Court will consider matters outside the pleadings in addressing Defendant's motion, applying a summary judgment standard of review.

The standard of review applicable to summary judgment requires the Court to consider the evidence found in the record, as summary judgment is proper if there are no disputed issues of material fact.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank of Missouri, 92 F.3d 743,

747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

### B.   Statute of Limitations

As a general matter, this Court has jurisdiction over tax refund claims pursuant to 28 U.S.C. § 1346(a)(1), which confers jurisdiction over suits against the United States "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." A plaintiff must satisfy certain prerequisites, however, prior to invoking jurisdiction. "It is a well-established rule that a timely, sufficient claim for refund is a jurisdictional prerequisite to a refund suit." Sun Chem. Corp. v. United States, 698 F.2d 1203, 1206 (Fed. Cir. 1983). Courts require strict compliance with the statute of limitations in this context because "'[u]nder settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to

entertain the suit.'"   Stelco Holding Co. v. United States, 42 Fed. Cl. 101, 104 n.5 (Fed.

Cl. 1998) (citing United States v. Dalm, 494 U.S. 596, 608) (1990) (internal quotations

omitted)).

The grant of jurisdiction found in § 1346(a)(1) incorporates the requirements of 26

U.S.C. §§ 7422(a) and 6511, which outline the timeliness requirements for filing a tax

refund claim.  See Dalm, 494 U.S. at 601-02.  Pursuant to 28 U.S.C. § 7422, a taxpayer

must file a claim for refund or credit consistent with the requirements of § 6511 prior to

maintaining a suit for a tax refund.   Under § 6511, an administrative claim for a tax

refund must be filed with the IRS within either:  (1) three years from the date on which

the return giving rise to the refund claim was filed; or (2) two years from the date on

which the tax was paid, whichever is later.

Plaintiff's 2004 return was filed on October 15, 2004.  (Compl. ¶ 9 [Doc. No. 1];

Answer ¶ 9 [Doc. No. 6].)  Although it is unclear whether Plaintiff filed an amended

return and claim for refund on November 23, 2008 (Compl. ¶ 12 [Doc. No. 1]), or on

December 1, 2008 (Def.'s Ex. Supp. Mot. to Dismiss at 2 [Doc. No. 14]), even if the

Court looks to the earlier of the two dates, Plaintiff's administrative claim was untimely

filed.  As Plaintiff's return was filed on October 15, 2004, any claim for refund must have

been filed within three years, by October 15, 2007.  Instead, Plaintiff's claim for a refund

was filed over a year later, in November or December of 2008.

Plaintiff concedes that § 6511 is the applicable statute of limitations, but argues

that § 6511 does not apply to its refund claim because, as a tax exempt organization, it

was never required to file a return in the first instance.  (Pl.'s Mem. Supp. Mot. for

Summ. J. at 10-12 [Doc. No. 18].)  Section 6511(a), entitled "Limitations on credit or

refund," provides:

> Claim for credit or refund of an overpayment of any tax imposed by this
> title in respect of which tax the taxpayer is required to file a return shall be
> filed by the taxpayer within 3 years from the time the return was filed or 2
> years from the time the tax was paid, whichever of such periods expires the
> later, or if no return was filed by the taxpayer, within 2 years from the time
> the tax was paid. Claim for credit or refund of an overpayment of any tax
> imposed by this title which is required to be paid by means of a stamp shall
> be filed by the taxpayer within 3 years from the time the tax was paid.

26 U.S.C. § 6511(a) (emphasis added).  Illinois Lumber contends that the limitations

provisions of § 6511 only apply to taxpayers who are "required to file a tax return."

(Pl.'s Mem. Supp. Mot. for Summ. J. at 10-12 [Doc. No. 18].)

       While the Eighth Circuit Court of Appeals does not appear to have addressed this

issue, several courts have considered this very argument and rejected it.  See, e.g.,

Wachovia Bank, N.A. v. United States, 455 F.3d 1261, 164-69 (11th Cir. 2006); Little

People's School, Inc. v. United States, 842 F.2d 570, 572-574 (1st Cir. 1988);

Radioshack Corp. v. United States, 82 Fed. Cl. 155, 158-61 (Fed. Cl. 2008); J.O. Johnson,

Inc. v. United States, 476 F.2d 1337, 1340-42 (Fed. Cl. 1973); Alexander Proudfoot Co.

v. United States, 454 F.2d 1379, 1381-83 (Fed. Cl. 1972).   Acknowledging that an

interpretation such as that proposed by Plaintiff here is perhaps "the most 'natural'

meaning of the first sentence of § 6511(a)," courts have nonetheless refused to adopt this

reading because it "suffers from interpreting a single sentence in isolation."  Little

People's School, 842 F.2d at 573.  Mindful of the basic principles of statutory

construction that require courts to "always interpret a statutory provision with reference to

its context within the statute itself," courts have specifically interpreted the first sentence

of § 6511(a) in relation to § 7422, which is unambiguously entitled "Civil actions for

refund."  Id.  Subsection (a) of that section is further clearly entitled, "No suit prior to

filing claim for refund," and provides:

> No suit or proceeding shall be maintained in any court for the recovery of
> any internal revenue tax alleged to have been erroneously or illegally
> assessed or collected, or of any penalty claimed to have been collected
> without authority, or of any sum alleged to have been excessive or in any
> manner wrongfully collected, until a claim for refund or credit has been
> duly filed with the Secretary, according to the provisions of law in that
> regard, and the regulations of the Secretary established in pursuance
> thereof.

26 U.S.C. § 7422(a).  Discussing this provision in relation to § 6511, the First Circuit has

found that it "admits of one interpretation: the proper filing of an administrative refund

claim is a condition precedent to bringing suit for a refund.  'No suit' means no suit."

Little People's School, 842 F.2d at 573.  Other courts "have read sections 7422 and 6511

together and held that the section 6511 statute of limitations applies to a taxpayer even

though that taxpayer itself was not required to file a return with respect to the tax at

issue."  Radioshack, 82 Fed. Cl. at 159 (emphasis added) (citing J.O. Johnson, 476 F.2d at

1340-41; Proudfoot, 454 F.2d at 1382, n.7, Wachovia Bank, 455 F.3d at 1264-65; Little

People's School, 842 F.2d 570)).   As the Radioshack court explained, Plaintiff's

interpretation of § 6511 is inconsistent with § 7422(a), which makes filing a claim for

refund or credit a prerequisite to any suit for the recovery of any wrongfully assessed tax, or "of <u>any sum</u> alleged to have been excessive or in any manner wrongfully collected." <u>Id.</u>

Plaintiff does not contend that an alternative statute of limitations applies. Rather, Plaintiff appears to assert the position advanced by the plaintiff in <u>Little People's School</u>: "that refund claims brought by taxpayers such as itself are <u>subject to no administrative limitations period whatsoever.</u>" 842 F.2d at 573-74. However, as the court in that case found, such a reading of the Tax Code "makes little sense." <u>Id.</u> at 574. Rather, the most reasonable harmonization of § 6511(a) and § 7422(a) requires the court to find that the first sentence in § 6511(a) applies to all taxes, and to read "the provision's reference to 'the taxpayer' as a reference to a generic taxpayer (i.e., 'a taxpayer'), and not to the particular taxpayer seeking a refund in a particular instance." <u>Id.</u>

Courts have also found that § 7422's strict prohibition of any court action absent taxpayer compliance with § 6511 furthers the "the overall purpose of the short statutes of limitations in the Tax Code," which reflect "Congress' recognition that tax refund suits impede the effective administration of the revenue laws." <u>See</u> <u>Radioshack</u>, 82 Fed. Cl. at 159 (citing <u>Proudfoot</u>, 454 F.2d at 1383). Moreover, the court in <u>J.O. Johnson</u> found that one of the major purposes served by the shorter statute of limitations period found in § 6511 is to "allow the Government sufficient time to make an administrative investigation of the taxpayer's claim before deciding to contest it." 476 F.2d at 1341 (citing <u>Union Pac. R.R. v. United States</u>, 389 F.2d 437, 442-43 (Ct. Cl. 1968)). The limitations period

of § 6511 is also "aimed at allowing the IRS to isolate the areas of controversy and limit the scope of the impending litigation." (Id.)  In addition, it provides the IRS with an opportunity to correct any errors.  Proudfoot, 454 F.2d at 1383.

Another basis on which the court in Little People's School determined that § 6511 applied to an otherwise tax-exempt taxpayer concerned the proper function of the statute of limitations:

> It would indeed be a perverse statute of limitations that would operate in accordance with the school's favored interpretation of section 6511(a), that is, by requiring the decisionmaker (either a district court or the IRS) to determine whether a taxpayer was required to file a return in order to determine whether the taxpayer was covered by section 6511(a)'s limitations period. The government aptly points out that such an inquiry often implicates the claim's merits.

842 F.2d at 574; see also Wachovia, 455 F.3d at 1269 ("If we adopted [the taxpayer's] position, no one could know whether the § 6511(a) statute of limitations provision applied to a claim until the merits of the claim were decided.")  Plaintiff argues that this reasoning in support of the strict application of § 6511 is inapplicable to the facts of this case, as there is no dispute "that Plaintiff was not required to file a return."  (Pl.'s Reply Mem. at 4-5 [Doc. No. 26].)   This rationale which Plaintiff seeks to distinguish, however, was but one basis upon which the court in Little People's School held that the statute of limitations applied to bar the refund claim of the tax-exempt school's erroneously filed taxes.  As discussed herein, courts have articulated several reasons for strictly applying § 6511, even to taxpayers who are not required to file a return – for example, statutory construction, public policy, notice, and an opportunity to correct errors.   These reasons

apply with equal force here.  Plaintiff identifies no precedent in opposition to Defendant's

legal authority.  Accordingly, the Court agrees with Defendant that the statute of

limitations found in § 6511 bars Plaintiff's refund claim, absent some form of relief.

### C.    Mitigation

The Eighth Circuit has observed that "courts may not use nonstatutory equitable

reasons to toll the 'unusually emphatic' time limitations set forth in 26 U.S.C. § 6511."

Abston v. Comm'r of IRS, 691 F.3d 992, 994 (8th Cir. 2012) (quoting United States v.

Brockamp, 519 U.S. 347, 350 (1997)).   Although this may sometimes produce harsh

results, on balance, a strict approach is warranted when applied to the more typical case in

which the statute of limitations arises.   As one court has observed,

> The normal statute of limitations situation is one where a potential plaintiff
> is unhampered and unhindered in bringing a cause of action, yet allows so
> long a time to go by without acting that the probabilities become strong that
> unfairness to his potential opponent will develop either through
> disappearance of evidence, weakening of memory, death or departure of
> witnesses, or change of position. One must, after expiration of a fixed
> period, be able to know that a matter is over and done with.

Chertkof v. United States, 676 F.2d 984, 991 (4th Cir. 1982).  However, in some

situations, taxpayer plaintiffs may fall into a "nonculpable trap" in which the statute of

limitations expires before a subsequent determination leads to a change in tax liability.

Id. at 990.

> It is only when the latter determination is fixed that, for the first time, a
> need arises to revise the computation of the tax on which limitations for a
> refund claim (or for a claim for additional taxes should the determination
> have favored the taxpayer) has expired.

Id.

The mitigation provisions of 26 U.S.C. §§ 1311-14 provide a form of statutory relief.   These provisions may apply in certain limited circumstances to claims that are otherwise barred by the statute of limitations.   See 26 U.S.C. § 1311(a) (providing that if correction of a taxation error "is prevented by the operation of any law or rule of law, . . . then the effect of the error shall be corrected by an adjustment . . . .")  "The mitigation provisions were intended to insure that if certain prerequisites were met either the Government or the taxpayer would be able to secure relief."  First Nat'l Bank of Omaha v. United States, 565 F.2d 507, 514 (8th Cir. 1977).  The goal of the mitigation provisions is "to leave the parties in as near as possible the position they would have been in if the item had been properly treated through the years."  Id.  The remedy provided by the mitigation provisions "should be interpreted as consistent with equitable principles unless a contrary intention is manifest in the statute."  Id. at 516.  Accordingly, although the mitigation provisions are limited to certain defined circumstances, they "should be given a liberal interpretation."  Cooper v. C.I.R., 718 F.3d 216, 224 (3d Cir. 2013).

The party invoking mitigation bears the burden of establishing the following requirements:

(1) there must be a "determination" as defined by 26 U.S.C. § 1313(a);

(2) the "determination" must be a specified circumstance of adjustment listed in 26 U.S.C. § 1312; and

(3) "the party against whom the mitigation provisions are being invoked has maintained a position inconsistent with the challenged erroneous inclusion, exclusion, recognition or nonrecognition of income."

Malm v. United States, 420 F. Supp.2d 1040, 1041 (D. N.D. 2005) (citing O'Brien v. United States, 766 F.2d 1038, 1041 (7th Cir. 1985)).   Defendant contends that Plaintiff does not satisfy any of these requirements.   As discussed below, the resolution of the parties' motions involves the unique intersection of the law on mitigation and recent legal precedent on the tax treatment of demutualization proceeds.

### 1.   "Determination"

A determination may take the form of "a final disposition by the Secretary of a claim for refund."  26 U.S.C. § 1313(a)(3).  An administrative claim is deemed fully disposed of upon the expiration of the time for instituting suit, "unless suit is instituted before the expiration of such time."  26 U.S.C. § 1313(a)(3)(B).  Under 26 U.S.C. § 6532(a)(1), a two-year statute of limitations applies to civil lawsuits initiated by taxpayers to recover refunds.  Where a taxpayer initiates a lawsuit prior to the expiration of the statute of limitations, the administrative refund claim may nevertheless be considered fully disposed of if "[t]he taxpayer's claim for refund is unqualifiedly disallowed. . . ."  26 C.F.R. § 1.1313(a)-3(c)(1).  Defendant argues that there has been no final "determination" because Plaintiff did not wait "until the time for instituting a suit for the refund ha[d] expired."  (Def.'s Opp'n Mem. at 11 [Doc. No. 23].)  Assuming that the June 24, 2011 letter marks the date of final determination, Defendant argues that by filing this suit on March 28, 2013, Plaintiff filed this suit three months too soon –  before the end of

the two-year period on June 24, 2013.  (<u>Id.</u> at 11-12.)  The Government thus argues, on the one hand, that Plaintiff sought administrative relief too late for purposes of the statute of limitations, and on the other hand, that Plaintiff sought civil relief in federal court too soon for purposes of the mitigation provisions.

The facts, however, demonstrate that Plaintiff's administrative refund claim was unqualifiedly disallowed.  In addition to the April 18, 2011 letter and the June 24, 2011 letter, the IRS's subsequent post-determination letters of August 16, 2011 and September 14, 2011 make clear that Plaintiff's refund claim was disallowed.  (Exs. P17 & P19 to Ulrich Aff.)

Finding that Plaintiff's administrative refund claim was unqualifiedly disallowed, the Court further finds that the letters of April 18, 2011 and June 24, 2011 constitute the final determination of Illinois Lumber's administrative claim.  In the April 18 letter, Appeals Officer Julie North expressly stated that since Illinois Lumber's refund claim for 2004 was untimely, "it must be denied."  (Ex. P14 to Ulrich Aff.)  But had Illinois Lumber filed a timely claim, North asserted that "we would have granted their claim," in light of the Federal Circuit's affirmance of <u>Fisher</u>.  (<u>Id.</u>)   The letter of June 24, sent via certified mail, is equally unqualified in its language of disallowance, stating, "[t]his letter is your legal notice that your claim is fully disallowed."  (Ex. P16 to Ulrich Aff.)

To the extent that Defendant asserts that Ms. North's statements in the April 19 letter were "oral statements" or somehow not binding for purposes of a determination (Def.'s Opp'n Mem. at 20 [Doc. No. 23]), the Court disagrees.  First, the statements in

question were made in writing, in a government business letter.  (Ex. P14 to Ulrich Aff.)

Second, although it is true that the Government may not be estopped by the unauthorized

acts of its agents, see Estate of Akin v. United States, 31 Fed. Cl. 89, 97 (Fed. Cl. 1994),

the statements made by Appeals Officer North in the April 18, 2011 letter were not

"unauthorized."  Section 1313's reference to the Secretary in the phrase "finally disposed

of by the Secretary," 26 U.S.C. § 1313(a)(3), means "any officer, employee, or agency of

the Treasury Department duly authorized by the Secretary of the Treasury directly, or

indirectly by one or more redelegations of authority, to perform the function mentioned or

described in the context."  Brummet v. United States, 218 F. Supp.2d 1253, 1257-58 (D.

Or. 2002).   In the April 18 letter, Appeals Officer North communicated with Mr. Ulrich

regarding the status of Illinois Lumber's administrative appeal.  (Ex. P14 to Ulrich Aff.)

Statements made in the April 18 letter were within the scope of Ms. North's authority, as

were statements made in the June 24 letter from Appeals Team Manager Charles Fisher.[4]

---

[4] In its various legal memoranda, Plaintiff does not identify as a "determination" the IRS's May 12, 1989 letter conferring tax-exempt status on Illinois Lumber.  However, because Illinois Lumber raises this issue in its correspondence with the IRS (Ex. P15 to Ulrich Aff. at 11), the Court briefly addresses this argument.   The Court does not consider this letter to be a "determination" for purposes of § 1311(a), nor is it generally determinative of whether the mitigation provisions apply.   First, the letter broadly grants tax-exempt status to Illinois Lumber, but it does not in any way address the tax consequences to Illinois Lumber in the event of insurance company demutualization. Second, while granting tax-exempt status in general, the IRS noted that Illinois Lumber could be subject to the tax on related business income under the Tax Code.  (Ex. P1 to Ulrich Aff.)  While the specific underlying point of contention in this case is whether Illinois Lumber's demutualization proceeds were taxable as unrelated business income, the general principle remains true that even as a tax-exempt organization, Illinois Lumber could be subject to tax on related business income in other unidentified contexts.  This letter is not a determination for purposes of mitigation.

## 2.      Specific Circumstance of Adjustment

The second requirement for mitigation is that the determination must fall into one

of the seven specified circumstances of adjustment listed in 26 U.S.C. § 1312.  Defendant

argues that the IRS's allowance of Illinois Lumber's refund claims for 2006 and 2008

does not constitute one of the seven enumerated circumstances.  (Def.'s Opp'n Mem. at

15 [Doc. No. 23].)  While this is true, Plaintiff identifies subsection (7) relating to a

determination that ascertains the basis of the property as the specific circumstance of

adjustment applicable to this claim.  (Pl.'s Mem. Supp. Mot. for Summ. J. at 14-15 [Doc.

No. 18].)   The subheading for this subsection of the Tax Code is entitled "[b]asis of

property after erroneous treatment of a prior transaction."  26 U.S.C. § 1312(7).  Mr.

Ulrich likewise identified this subsection in at least three prior letters to the IRS, both

before and after the IRS's determination (Exs. P15; P18; P20 to Ulrich Aff.)  In the record

before the Court, no letter from the IRS ever responds to the application of subsection (7)

on the merits.

A party seeking mitigation under this basis-related circumstance of adjustment

---

In addition, in Mr. Ulrich's September 5, 2011 letter to Mr. Fisher, he identified the
<u>Fisher</u> decision as a "determination" for purposes of §§ 1312-13.  (Ex. P18 to Ulrich Aff.
at 3-4.)  It is true that a decision of the Tax Court or a judgment or decree by any court of
competent jurisdiction may be considered a "determination." 26 U.S.C. § 1313(a)(1).
However, a taxpayer seeking mitigation due to the erroneous treatment of basis must be
"the taxpayer with respect to whom the determination is made," or a taxpayer who either
held title or acquired title to the property.  26 U.S.C. § 1312(7)(B)(i)-(iii).  Illinois
Lumber has no such relationship with the plaintiff in <u>Fisher</u>.  Accordingly, the <u>Fisher</u>
ruling is not a "determination" applicable to Illinois Lumber, as the term is defined by the
mitigation sections of the Tax Code.

must prove the following elements:

> (1) the relevant "determination" determines the basis of property;

> (2) there exists a "transaction on which such basis depends;"

> (3) "'in respect of' the 'transaction * * there occurred' a described error (listed in § 1312(7)(C)) which includes, for example, erroneous recognition and nonrecognition of gain or loss and erroneous inclusion or exclusion of gross income;" and

> (4) the described error occurred "with respect to a [described] taxpayer."

Malm, 420 F. Supp.2d at 1042 (citing O'Brien, 766 F.2d at 1042).

### a.      The Relevant Determination Determines the Basis of Property

First, as to whether the relevant determination determines the basis of property, Plaintiff filed the 2004 return due to the belief, based on Revenue Ruling 71-233, that demutualization proceeds were taxable.  (See Ex. P2 to Ulrich Aff.)  Revenue Ruling 71-233, which concerns the consequences to stock in a mutual life insurance company where that company is demutualized and becomes a newly organized stock life insurance company, specifically states that policyholders will have a zero basis in preferred stock issued to them "since the basis in [the policyholder's] proprietary interest exchanged therefor was zero."  Rev. Ruling 71-233, 1971 WL 26956.   The subsequent April 18, 2011 IRS letter announced a position completely different: "demutualization payments are not taxable and are not reportable as unrelated business taxable income (see Fisher v. United States, 82 Fed. Cl. 780 (2008), aff'd per curiam, 333 Fed. App'x 572 (Fed. Cir. 2009))."  (Ex. P14 to Ulrich Aff.)

The plaintiff in Fisher, like Illinois Lumber, received proceeds from an insurance company demutualizaton.  82 Fed. Cl. at 782-83.  In the case of Fisher, the plaintiff initially received stock in exchange for its voting and liquidation rates, but then opted for a "cash election," permitting the insurance company to sell the shares for cash.  Id.  Fisher reported this amount on his federal tax return, unreduced by any basis adjustment, and paid the applicable tax.  Id. at 783.  Subsequently, the plaintiff filed a timely claim for refund, which was denied, and then initiated a lawsuit.  Id.  Following a trial, the court found that Fisher had cost basis in the stock that he had received with the demutualization, rejecting the IRS's valuation of zero basis.  Id. at 799.  The court concluded, ". . . [T]he amount received by plaintiff being less than its cost basis in the insurance policy as a whole, the court finds that plaintiff, in fact, did not realize any income on the sale of the stock in question and, therefore, is entitled to the requested refund."  Id.[5]  It is thus clear that the valuation of basis in demutualization proceeds is central to the holding in Fisher.

Three other post-Fisher demutualization decisions are of note.  In Dorrance v. United States, No. CV-09-1284-PHX-GMS, 2013 WL 1704907, at *6 (D. Ariz. April 19, 2013), the plaintiffs had received shares of stock in an insurance company

---

[5]  The court in Fisher reached its conclusion based on the "open transaction" exception, or Open Transaction Doctrine, to a Treasury regulation requiring the apportionment of basis when part of a larger property is sold.  Fisher, 82 Fed. Cl. at 795.  The Court of Federal Claims applied the doctrine to the taxpayer's sale of stock received as a demutualization distribution, finding the amount less than the taxpayer's cost basis in its insurance policy as a whole.  Id.

demutualization, sold the shares, and reported their basis as zero, consistent with IRS

policy. They subsequently sought a refund, challenging the determination that they had

no basis in the stock. See Dorrance, 877 F.Supp.2d 827, 830 (D. Ariz. 2012). The court

denied the parties' cross motions for summary judgment, rejecting the use of the Open

Transaction Doctrine, and suggesting instead that the parties compare premiums paid to

the mutual companies with those paid to non-mutual companies, and the ratio of policy

market value to starting value. Id. at 836-37. Following a bench trial, the court found

that the plaintiffs held basis in their shares and were entitled to a refund. Dorrance, 2013

WL 17404907, at *7.

In Reuben v. United States, No. CV 11-09448 SJO (PJWx), 2013 WL 656864, at

*11 (C.D. Cal. 2013), the court reached the opposite conclusion. Ruling in favor of the

IRS on the parties' cross motions for summary judgment, the court found that the plaintiff

taxpayer failed to show that he had any cost basis in the shares of stock received in the

demutualization. Id. at *11. The court noted that while the Fisher plaintiff chose to

receive cash in lieu of shares of stock, the plaintiff in Reuben sold shares of stock six

years after receiving distribution – thus, for several years, Reuben received stock and

retained a marketable life insurance policy. Id. at *7. The court further distinguished

Fisher noting that in Fisher, the court applied the Open Transaction Doctrine after a trial,

while in Reuben, the plaintiff sought to apply the doctrine on summary judgment. Id.

Morever, in the IRS's opposition to summary judgment, it submitted evidence from an

expert actuary who opined that the monetary value of membership rights was "'negligible

27

or zero predetmutualization.'" Id.  In addition, the court found that the plaintiff had not

shown that "'allocating basis between the mutual rights and the stock [was] so difficult'"

that the Open Transaction Doctrine was appropriate.  Id. (quoting Dorrance, 2012 WL

2798649 at *6.)

The opinion in Cadrecha v. United States, 104 Fed. Cl. 296, 302-05 (Fed. Cl.

2012), indirectly concerns demutualization because the court did not reach the merits of

the plaintiffs' claims.  The Cadrecha plaintiffs had received stock in exchange for their

interest in a demutualized insurance company.  Id. at 298.  Plaintiffs then reported a gain

from the sale of the stock that failed to account for any basis that they held in it.  Id.

Upon learning of the Fisher decision, the plaintiffs sought a refund, arguing that they had

not realized any capital gain on the sale of the stock, as the proceeds were offset by the

basis in the stock.  Id.  Although the plaintiffs' initial amended return was timely filed,

the IRS asked for supporting documentation after the statute of limitations had expired.

Id.  After the plaintiffs submitted the supporting materials, the IRS disallowed the refund

claim as untimely.  Id.  The court found that although the IRS may have inadvertently

construed the plaintiff's final submission as their original claim, the Tax Code "makes no

provision for tolling the statute of limitations for equitable reasons."  Id. at 304 (citations

omitted).  Plaintiffs apparently did not seek relief under the Tax Code's mitigation

provisions, nor was any other form of relief available.  Accordingly, the court found that

the Plaintiffs' refund claims were untimely and dismissed the case for lack of jurisdiction.

Id. at 305-06.

This Court acknowledges that <u>Fisher</u> and the subsequent demutualization cases are not binding precedent on this Court.  However, in the absence of Eighth Circuit and Supreme Court authority, they are persuasive and relevant.   <u>Fisher</u>, <u>Dorrance</u>, and <u>Reuben</u> all address whether a taxpayer-policyholder has taxable basis in the proceeds of an insurance company's demutualization.  Here, the IRS's letter of June 24, 2011 merely refers to the statute of limitations as the stated reason for disallowance.  However, because the April 18, 2011 letter from the IRS expressly cites <u>Fisher</u> – stating that demutualization proceeds are <u>not</u> taxable – the Court finds that "the relevant 'determination'" here "determines the basis of property."  <u>Malm</u>, 420 F. Supp.2d at 1042 (citing <u>O'Brien</u>, 766 F.2d at 1042).  In this case, the determination was that Illinois Lumber's cost basis was not zero, and but for the statute of limitations, Illinois Lumber would have received a tax refund.

### b.      Other Elements for § 1312(7)

A party claiming the circumstance of adjustment under § 1312(7) must establish that "[t]he determination determines the basis of property," as discussed above, "and in respect of any transaction on which such basis depends, . . . there occurred . . . [errors such as the erroneous inclusion or exclusion of gross income]."  <u>Koss v. United States</u>, 69 F.3d 705, 710-11 (3d Cir. 1995) (citing 26 U.S.C. . 1312(7)(A)&(C)) (emphasis omitted). A "transaction on which such basis depends" means "a business transaction in the ordinary sense of the term such as distributions, sales, purchases, dispositions, acquisitions or exchanges.  <u>Gardiner v. United States</u>, 536 F.2d 903, 907 (10th Cir. 1976).

This refers to "'the transaction in which the property was acquired, and the basis of the property at the time of disposition can be said to depend on [or is determined by] such transaction.'" O'Brien, 766 F.2d at 1043, n.5 (quoting United States v. Rushlight, 291 F.2d 508, 517 (9th Cir. 1961)).  This element is satisfied here, as there were no intervening transactions, unlike the facts in Koss and O'Brien.  In addition,"'in respect of'" any transaction, there must be an error described in § 1312(7)(C), such as erroneous recognition of gain or loss and erroneous inclusion or exclusion of income.   26 U.S.C. § 1312(7)(C); Malm, 420 F. Supp.2d at 1042.  Here, the erroneous recognition of gain resulting from the demutualization distribution was "in respect of any transaction in which such basis depends."  26 U.S.C. § 1312(7)(A).

Finally, as to the last element required under § 1312(7) – that the required error occur  "'with respect to a [described] taxpayer,'" – there is no dispute that Illinois Lumber is the taxpayer at issue.  26 U.S.C. § 1312(7)(A); Malm, 420 F. Supp.2d at 1042.

### 3.  Inconsistent Position

As to the third provision of § 1311 that requires an inconsistent position maintained by the Secretary, the Court looks for "logical inconsistency."  First Nat'l Bank of Omaha, 565 F.2d at 515.   Under this provision, "a taxpayer may claim a refund for a barred year where the correct result is given effect in an open year by a determination, and that correct result is inconsistent with the treatment of the item in a barred year." Avery v. United States, 247 F. Supp. 611, 613 (W.D.N.Y. 1965).

Defendant contends that it has not maintained an inconsistent position with respect to the treatment of demutualization proceeds.  (Def.'s Opp'n Mem. at 13 [Doc. No. 23].)  Arguing that the IRS has made no final determination, as discussed previously, the Government contends that the IRS's positions cannot be considered inconsistent.  (Id.)  In support of this position, Defendant further argues that although it does not consider the June 24, 2011 notice of claim disallowance to be a final determination, in that letter, "the IRS concluded that the demutualization payment was taxable."  (Id.)  The letter, however, makes no reference whatsoever to the tax consequences of receiving a demutualization payment.  (Ex. P16 to Ulrich Aff.)  Rather, the IRS merely states that Plaintiff is not entitled to a refund because it did not file a timely claim for a refund.  (Id.)

Plaintiff contends that the letter from Great American, referring to a private letter ruling obtained by the IRS, is inconsistent with the IRS's subsequent acknowledgment and acceptance of Fisher in the April 18, 2011 letter and in the Explanation of Items granting the 2006 and 2008 refunds.  Certainly, the representation in Great American's September 2003 letter is inconsistent with the IRS's later opinion on the tax consequences of Plaintiff's demutualization payments, as expressed in the April 18 letter.  However, "[m]ost courts. . . do not consider private letter rulings, issued to other taxpayers, to be of precedential value in deciding the tax claims before them.  Amergen Energy Co., LLC ex rel. Exelon Generation Co., LLC v. United States, 94 Fed. Cl. 413, 418 (Fed. Cl. 2010) (collecting cases).  The Eighth Circuit has also noted that private letter rulings, by their terms, are "directed only to the taxpayer [who] requested [them]."  Peerless Corp. v.

United States, 185 F.3d 922, 928 (8th Cir. 1999) (finding no abuse of discretion in exclusion of private letter ruling issued to third party).   Here, although the ruling was directed to Illinois Lumber's holding company, on the very issue in question, the general authority prohibiting a party's reliance on a private letter ruling issued to another taxpayer applies.   In any event, the actual private letter ruling was not submitted as an exhibit, but is merely referenced in the September 2003 demutualization distribution transmittal letter from General American to Illinois Lumber.   (Ex. P2 to Ulrich Aff.)   The Court therefore will not consider the cross-reference of a private letter ruling issued to a third party as evidence of inconsistency.

Although Defendant argues that the IRS "has consistently treated the demutualization payments at issue as taxable." (Def.'s Opp'n Mem. at 2 [Doc. No. 23]), the facts indicate otherwise.   As to this particular taxpayer, the IRS has taken inconsistent positions.   Nor does it now offer any substantive explanation for granting refunds for Plaintiff's 2006 and 2008 returns.   In granting refunds for those two years, the IRS explained that it followed Revenue Ruling 71-233 on the treatment of demutualization proceeds, but acknowledged that its position was rejected by the court in Fisher.   (Exs. P8 & P9 to Ulrich Aff. at 3.)   Moreover, even though Fisher was not binding authority as to Illinois Lumber – an argument that the Government raises again here – the IRS nevertheless adhered to the Fisher ruling, stating, "Since the Court of Appeals ruled that the taxpayer in the similar case is entitled to the refund requested, and upon which ruling this case, with the same issue, was awaiting and dependent upon, *the claim for refund for*

*taxes for proceeds from insurance demutualization should be allowed in full* pursuant to

[Fisher]." (Id.)  Likewise, the April 18, 2011 letter expressly accepts the holding in

Fisher and, but for the lapsed statute of limitations, the IRS would have applied it to

Illinois Lumber's 2004 refund claim.  (Ex. P14 to Ulrich Aff.)

Defendant also argues that pursuant to 26 C.F.R. § 1.1311(b)-1(b)(2), an

adjustment is not permitted if the taxpayer with respect to whom the determination is

made, and not the IRS, has maintained an inconsistent position.  (Def.'s Opp'n Mem. at

13 [Doc. No. 23].)  Here, however, the IRS has maintained an inconsistent position, as

noted above.  Moreover, to the extent that Plaintiff's position has been inconsistent, it has

been at the IRS's direction.  This provision does not apply to the facts of this case.

Addressing whether mitigation applied to a plaintiff's time-barred claim, the court

in Skinner v. United States, 202 F.Supp. 598, 599 (S.D. Tex. 1962), considered a refund

suit based on the taxpayer's erroneous calculation of basis over a period of several years.

During these years, the taxpayer had calculated a much lower basis in certain stock, and

thereby incurred a higher tax, instead of utilizing a higher basis available to him upon the

death of his wife, as permitted by statute.  Id.  The taxpayer's claim for an administrative

refund was granted as to certain later tax years, but was denied with respect to recovery of

the tax paid for the earliest year, 1955, because the statute of limitations had expired.  Id.

Skinner argued that mitigation applied under § 1311(b)(1), as the IRS's actions in

granting a refund for the later years demonstrated an inconsistent position.  Id.  While the

court acknowledged that granting the refund was indeed a subsequent inconsistent

position on the part of the IRS, it found that the plaintiff nonetheless failed to meet the

requirements for mitigation:

> The mere fact that the Government has passively accepted the basis
> established and reported by the taxpayer, and then subsequently granted the
> refund, agreeing that the basis reported by the taxpayer in 1955 was
> erroneously computed, does not create a circumstance of adjustment.
>
> This is not a situation where the Government has subsequently, for
> example, allowed expenses or claims which in previous years it had denied,
> thereby constituting an inconsistent position. There was no active
> inconsistency on the part of the Government which prejudiced the rights of
> the Plaintiffs. It is the Plaintiffs' own inconsistency which has put them in
> their unenviable position.

Id.

Unlike the taxpayer in Skinner, the taxpayer in this case did not make the wrong

assumption – Illinois Lumber followed the general IRS treatment of demutualization

payments, as set forth in Revenue Ruling 71-233.   Also distinguishable from Skinner,

had Illinois Lumber not reported the 2004 demutualization payment as a taxable gain, the

IRS could have taken action against Illinois Lumber to recoup the unpaid tax.  Morever,

the Government did not merely act passively – it affirmatively took one position with

respect to demutualization payments, then changed it later with respect to Illinois

Lumber.  Pursuant to Revenue Ruling 71-233, the IRS maintained that payments received

by policyholders in a demutualization process have zero basis, and are therefore subject to

taxation.  (Exs. P14; P8 & P9 to Ulrich Aff.)   Consistent with that ruling, Illinois Lumber

reported a taxable gain from its demutualization payments.  Upon learning of the August

6, 2008 Fisher decision, Illinois Lumber sought tax refunds for its erroneous filings

within two to four months of the issuance of <u>Fisher</u>.  There is no way that Plaintiff could have prophylactically filed its refund claim for 2004 in satisfaction of the statute of limitations because it had no reason to know that the IRS would change its position in light of <u>Fisher</u>.  By the time <u>Fisher</u> was issued, the three-year statute of limitations for Illinois Lumber to file a refund claim for its 2004 taxes had expired.   Strict application of the statute of limitations to these facts would render Illinois Lumber's refund rights meaningless.

In addition, the IRS did not simply grant Plaintiff refunds for 2006 and 2008 without explanation.  Rather, while noting its disagreement, it explained that pursuant to <u>Fisher</u>, the demutualization proceeds would have a basis other than zero, and consequently, would not be taxable.  (Exs. P8 & P9 to Ulrich Aff.)  Moreover, on the substance of Plaintiff's refund claim for 2004, the IRS <u>agreed</u> with Plaintiff and would have granted the claim in light of <u>Fisher</u>, but for the expired statute of limitations.  (Ex. P14 to Ulrich Aff.)  Thus, unlike <u>Skinner</u>, there was indeed "active inconsistency on the part of the Government which prejudiced the rights of the Plaintiff[]."  202 F.Supp. at 599.

Here, the substantive position adopted in the April 18, 2011 letter that demutualization proceeds are not taxable – a position not substantively disavowed in the June 24, 2011 final disallowance letter – constitutes a determination that is inconsistent with the IRS's position that demutualization payments are taxable because they result in zero basis to the policyholder/taxpayer.  <u>See</u> 26 U.S.C. § 1311(a)-(b).  Accordingly, the

Court finds that the Secretary has maintained a logically inconsistent position as to Illinois Lumber, in satisfaction of the mitigation provision found in § 1311(b)(1). <u>See First Nat'l Bank of Omaha</u>, 565 F.2d at 515.

The Court therefore finds that Plaintiff satisfies the mitigation provisions of 26 U.S.C. §§ 1311-14. Plaintiff has met its burden of establishing that there was an IRS determination that prevented it from correcting its erroneous filing, the determination concerned the specific circumstance of adjustment found in §1312(7), and the Secretary adopted a position in the determination and maintained a position inconsistent with the erroneous inclusion or recognition of taxable gain. <u>See</u> 26 U.S.C. § 1311.

Because the Court finds that the mitigation provisions of the Tax Code apply, it need not determine whether, as Plaintiff argues, it is entitled to relief because the IRS is required to "make" a return for Illinois Lumber under 26 U.S.C. § 6020(b)(1). Section 6020 grants the Secretary the authority to prepare a return for taxpayers who initially fail to file, but subsequently consent to disclose all the information necessary for the preparation of a return. 26 U.S.C. § 6020(a). The statute also provides this remedy where the taxpayer makes a "false or fraudulent return." 26 U.S.C. § 6020(b). Neither of these appear to apply to the facts before the Court.

### 4.    Whether Issues of Material Fact Remain in Dispute

Even if the Court finds that Plaintiff's claim is not time-barred, Defendant argues that summary judgment is improper because Illinois Lumber has not established "what it paid for its proprietary interest, that is, what it paid under the mutual insurance contract

for its membership rights." (Def.'s Opp'n Mem. at 23 [Doc. No. 23].)   In addition, the

Government contends that summary judgment is also improper because the courts in

<u>Fisher</u>, <u>Dorrance</u>, and <u>Reuben</u> have reached three different conclusions on the taxability

of demutualizaton payments. (<u>Id.</u> at 24.) Further, Defendant notes that courts that have

considered this issue have used different formulas or methods to determine the taxpayer's

basis. (<u>Id.</u>)

   The Court disagrees with Defendant's characterization of the existing precedent on

the tax liability for the receipt of demutualization proceeds. The courts in both <u>Fisher</u> and

<u>Dorrance</u> ultimately concluded that the taxpayer plaintiffs were entitled to refunds for

taxes that they had paid on their demutualization proceeds.  To the extent that the

opinions differ, it is in the method by which the refund is calculated – the <u>Fisher</u> court

applied the Open Transaction Doctrine; the <u>Dorrance</u> court calculated a fixed component

for the loss of voting rights and a variable component for the loss of other rights, based on

the policyholder's past and projected premium contributions to the surplus, combined

with an estimate of future contributions.  In any event, the facts of this case are even

stronger than in <u>Fisher</u> and <u>Dorrance</u>. Those cases establish that the IRS created the

incorrect basis calculation in this demutualization context. With respect to Illinois

Lumber, the IRS went a step further, agreeing with Plaintiff that it was entitled to a refund

based on <u>Fisher</u>. Taking yet another step further, and consistent with its

recognition of the legal change in light of <u>Fisher</u>, the IRS refunded to Illinois Lumber the

payments for 2006 and 2008 that were not time-barred.

As for <u>Reuben</u>, while the court ruled in favor of the IRS, it also distinguished the facts and procedural posture from those in <u>Fisher.</u>  2013 WL 656864 at *7.  The <u>Reuben</u> decision focused on the insufficiency of the taxpayer's evidence, pointing to the IRS's substantial evidence that none of the policyholder's premiums were paid for membership interests rather than for the underlying insurance policy.  <u>Id.</u> at *9-11.  Moreover, unlike Illinois Lumber, the taxpayer in <u>Reuben</u> could not point to the IRS's inconsistent treatment of his demutualization proceeds in other years.

Ample correspondence is before the Court in the parties' exhibits – all of which presage the legal arguments presented in the parties' legal memoranda.  The IRS has been on notice of Plaintiff's mitigation argument as of at least May 30, 2011 – prior to the issuance of the IRS's full claim disallowance on June 24, 2011 – when Mr. Ulrich pointed to § 1312(7) as the applicable mitigation provision.  (Ex. P15 to Ulrich Aff.)  To the extent that Defendant argues that extensive discovery is necessary in order to resolve Plaintiff's claims, the IRS required no such discovery prior to issuing Plaintiff's refunds for 2006 and 2008.  Defendant has expressly conceded that there is no difference between Plaintiff's refund claims for those years and the year in dispute, stating, "Had [Illinois Lumber's] claim been timely filed, we would have granted their claim. . . ."  (Ex. P14 to Ulrich Aff.)

Just as importantly, while the courts in <u>Fisher</u> and <u>Dorrance</u> applied different methods in order to determine the cost basis of the respective demutualization payments, Defendant here has already utilized a particular method of calculating Plaintiff's refunds.

(See Def.'s Opp'n Mem. at 22 [Doc. No. 23]) ("The tax effect of the cost basis

determination can be seen in the revenue agent's analysis for the 2008 year. . . .")   For

Plaintiff's 2008 taxes, the IRS refunded $32,035.  (Ex. P8 to Ulrich Aff.)   An IRS

revenue agent documented the Service's methodology in the following chart:

| Insurance Demutalization Proceeds FYE 2008 | 990-T Filed | 990-T Amended | Difference |
|---|---|---|---|
| Sales price less cost basis | 213,567 -      0 | 213,567 -213,567 | 0 -213,567 |
| Gain (loss) | 213,567 | 0 | -213,567 |
| Net long term gain/loss | 227,687 | 14,120 | 213,567 |
| Unrelated business taxable income | 239,957 | 26,390 | 213,567 |
| Trusts Schedule D - Form 1041 Taxes owed per attached Schedule D | 37,491 | 5,456 | 32,035 |
| Less 2007 Tax Payments | 33,000 | 33,000 | 0 |
| **Taxes due before penalty** | 4,491 | -27,544 | 32,035 |
| Estimated tax penalty | 226 | 137 | 89 |
| Total tax due | 4,717 | -27,407 | 32,124 |

Id. at 4.   Similarly, regarding Plaintiff's 2006 taxes, the IRS refunded $42,847,

explaining its calculations with this chart:

| Insurance Demutalization Proceeds FYE 2006 | 990-T Filed | 990-T Amended | Difference |
|---|---|---|---|
| Sales price less cost basis | 285,647 -      0 | 285,647 -285,647 | 0 -285,647 |

| Gain (loss) | 285,647 | 0 | -285,647 |
|---|---|---|---|
| Net long term gain/loss | 288,085 | 2,438 | 285,647 |
| Unrelated business taxable income | 290,838 | 5,191 | 285,647 |
| Trusts Schedule D - Form 1041 Taxes owed per attached Schedule D | 43,701 | 854 | 42,847 |
| Less 2007 Tax Payments | 58,000 | 58,000 | 0 |
| **Taxes due before penalty** | -14,299 | -57,146 | 42,847 |
| Estimated tax penalty | 0 | 0 | 0 |
| Total tax due | -14,299 | -57,146 | 42,847 |

(Ex. P9 to Ulrich Aff. at 4.)   The Court finds that this method of calculation may likewise be applied to Plaintiffs 2004 taxes.

While the Tax Code's statute of limitations applicable to claims for refunds are to be strictly applied, the mitigation provisions of the Tax Code provide a form of equitable relief, in very limited circumstances.   This case falls into that limited category of cases to which the mitigation provisions of §§ 1311-14 apply.   Accordingly, the Court grants Plaintiff's summary judgment motion and denies Defendant's motion to dismiss.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Defendant's Motion to Dismiss for Lack of Jurisdiction [Doc. No. 11] is

        **DENIED**; and

2.      Plaintiff's Motion for Summary Judgment [Doc. No. 16] is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:    April 30, 2014

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge
